


# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>FOCUS MEDIA, INC.,<br><br>Debtor(s). | BK. No. LA 00-38197 VZ<br>Adv. No. 02-02675 VZ<br><br>Chapter 7 |
| JOHN P. PRINGLE, Chapter 7 Trustee<br><br>Plaintiff(s),<br><br>v.<br><br>GEOFFREY C. MOUSSEAU<br><br>Defendant(s). | FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER GRANTING MOTION FOR SUMMARY JUDGEMENT |

On April 30, 2003, John P. Pringle, Chapter 7 Trustee ("Movant") filed a Motion for Summary Judgment or Summary Adjudication of Issues (the "Motion") against Defendant Geoffrey C. Mousseau ("Defendant" or "Mousseau") which came regularly for hearing on June 19, 2003 at 11:00 a.m.

Having considered all papers submitted both in support of and in opposition

to the Motion, I find the following facts are without dispute:

1. Focus Media, Inc. was an independent media buying company and a marketing and advertising consultant that specialized in placement of broadcast spots.

2. Focus Media was incorporated in 1983. It is a Subchapter S Corporation. The sole shareholder is Thomas E. Rubin. He was also the Chairman of the Board of Directors and Chief Executive Officer. Thomas Sullivan is the Chief Financial Officer and a Director of Focus Media.

3. Defendant Geoffrey C. Mousseau dba Mousseau & Associates and Law Offices of Geoffrey C. Mousseau is an individual and an attorney who was retained on or about September 28, 2000 to represent Thomas P. Sullivan and Thomas E. Rubin and who has represented Focus Media and Thomas P. Sullivan at times during the course of this Bankruptcy Case and related Adversary Proceedings.

4. On March 13, 2000, Sears, Roebuck & Co. ("Sears") sued Focus Media in the case entitled Sears, Roebuck & Co. v. Focus Media, Inc., etc, et al," Santa Monica Superior Court Case Number SC060780 (the "Sears Case").

5. On April 10, 2000, Judge Patricia L. Collins the Court issued its Preliminary Injunction in favor of Sears against Focus Media in the Sears Case stating that Sears had shown a probability of prevailing on the merits of the case and enjoining Focus Media from using any "Sears Funds." In the Preliminary Injunction issued on April 10, 2000, Judge Collins defined the Sears funds as "all amounts paid by Sears, excluding the monthly retainer, to Defendant [Focus] from October 1999 through the present, less any sums paid by Defendants on Sears' behalf".

6. On April 12, 2000, Universal sued Focus Media in the case entitled, "Universal City Studios, Inc., Universal Home Video, Inc., Universal City Development Partners, and Universal Film Exchanges Inc., v. Focus Media, Inc., etc, et al," Santa Monica Superior Court Case Number SC061252 (the "Universal Case").

7. On May 1, 2000, the Superior Court in the Universal Case issued a Preliminary Injunction against Focus Media in the amount of about $4,000,000.00.

8. On August 23, 2000, Focus Media was held in contempt for violating the Preliminary Injunction in the Sears Case.

9. On October 6, 2000, an Involuntary Petition under Chapter 7 of Title 11 was filed against Focus Media, in this Bankruptcy Case.

10. On October 6, 2000, an Involuntary Petition under Chapter 7 of Title 11 was filed against Focus Media in this Bankruptcy Case.

11. On Thursday, October 26, 2000, the Application for Order Shortening Time and the Motion of Sears Roebuck & Co., for the appointment of an Interim Trustee under 11 U.S.C. §303(g) (the "Sears Motion for Interim Trustee") was filed.

12. Defendant Mousseau received transfers from Focus Media including Focus Media check number 004339 for $20,000 dated October 5, 2000 (which cleared on October 10, 2000) and Focus Media check number 0004403 for $50,000 dated October 27, 2000 (which cleared on November 1, 2000).

13. On Thursday, October 26, 2000, funds in the amount of $250,000 were wire transferred to the trust account of Defendant Mousseau and on the same day, Defendant Mousseau executed and Stutman, Treister & Glatt ("ST&G") received check number 5159 in the amount of $250,000 drawn upon the Law Office of Geoffrey C. Mousseau Attorney/Client Trust Account ( the "Mousseau Client Trust Account") and payable to ST&G.

14. Defendant Mousseau told ST&G that the funds for Mousseau Client Trust Account check number 5159 had not come from Focus Media, including sending an e-mail to ST&G stating that, "...As you can see by comparing the timing of the retainer check to when I received transfers from Focus, the money used for the retainer was mine..."

15. Defendant Mousseau was involved in the retention of ST&G as Counsel for Focus Media and knew that the funds for retention of ST&G were not to come from Focus Media. The ST&G Retainer Agreement provided that ST&G was to be paid from funds that were not property of Focus Media. The ST&G Retainer Agreement provided that ST&G was to be paid from funds that were not the property of Focus Media.

16. On Friday, October 27, 2000, another $250,000 of funds was wire transferred from Focus Media to the Mousseau Client Trust Account.

17. On Friday, October 27, 2000, the check was deposited into ST&G Trust for Clients Account (the "ST&G Trust Account") at Mellon First Business Bank.

18. On Friday, October 27, 2000, Defendant Mousseau appeared at the hearing on Sear Motion to Appoint an Interim Trustee under §303(g).

19. On October 30, 2000, John P. Pringle was appointed as Interim Trustee during the gap period.

20. On Tuesday, October 31, 2000, the Mousseau Client Trust Account check number 5159 cleared.

21. At the time the Interim Trustee closed the Focus Media bank accounts, he obtained funds in the amount of $1,044,390.03.

22. On November 21, 2000, the Superior Court denied Focus Media's Motion to Dissolve the Preliminary Injunction in the Sears Case, finding that Focus Media had failed to alter the Court's determination that Sears would likely succeed on the merits.

23. Of the $570,000 transferred to Defendant Mousseau or his trust account by check or wire transfers during October 2000, the Bankruptcy Court has already ordered disgorgement of $220,000 paid to Defendant Mousseau pursuant to the

Order entered March 15, 2002, and this Adversary Proceeding concerns the remaining $350,000.00.

24. Defendant Mousseau claims that said $350,000 (the "Funds") was deposited in his truat account as respository for expenses pursuant to an Indemnification Agreement paragraphs 3(a), 3(c) and 5 (the "Indemnification Agreement").

25. Defendant Mousseau claims that pursuant to the Indemnification Agreement the Funds were property of Thomas Sullivan (and not Focus Media), once they were transferred to the Mousseau Client Trust Account.

26. The Indemnification Agreement calls for payment by Focus Media of fees and/or expenses "incurred by the Indemnitee" (Thomas Sullivan).

27. The Indemnification Agreement at paragraph 8(d) excludes indemnification of "Expenses or Liabilities on account of the Indemnitiee's conduct if such conduct shall be finally adjudged, after exhaustion of all rights of appeal to have been knowingly fraudulent, deliberately dishonest or willful misconduct or otherwise constitution a knowing and culpable violation of law."

28. The Indemnification Agreement at paragraph 17 "Governing Law" provides that "This Agreement shall be governed by and interpreted in accordance with the laws of the State of California."

29. Of the $350,000 of Funds, Defendant Mousseau disbursed $250,000 to ST&G and $100,000 overtime from the Mousseau Client Trust Account (the "Disbursements").

30. The Plaintiff Trustee did not know of the existence of the said $100,000 at the time that it was held in the Mousseau Client Trust Account. The Plaintiff Trustee did not know of the existence of the said $100,000 at the time that it was held in the Mousseau Client Trust Account and had no knowledge of the Disbursements at the time that they were made.

31. Robie & Matthai appeared as counsel for Focus Media (both in Bankruptcy Court and certain Appeals Courts) in connection with certain appeals of orders from the Bankruptcy Court.

32. Defendant Mousseau transferred $5,000 to Robie and Matthai from the Mousseau Client Trust Account by check number 5163 dated January 19, 2001.

33. Defendant Mousseau transferred $20,000 to Robie and Matthai from the Mousseau Client Trust Account by check number 5165 dated February 2, 2001.

34. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone ("Berger-Kahn") acted as Counsel for Focus Media for about one month in or about February and March of 2001, but never made an appearance in this Bankruptcy Case.

35. In connection with the retention of Berger-Kahn, Defendant Mousseau wrote them a letter stating. "Please be advised that the source of the funds paid to you by me as a partial payment of the retainer fee on behalf of Focus Media, Inc., were not assets of Focus Media, Inc., or the proceeds of such assets."

36. Defendant Mousseau transferred $25,000 to Berger-Kahn from the Mousseau Client Trust Account by check number 5167 dated Februay 4, 2001.

37. Bird, Marella, Boxer & Wolpert ("Bird-Marelly") served as defense counsel for Thomas P. Sullivan, the Chief Financial Office of Focus Media, in connection with a civil contempt proceeding brought against him by Sears, Roebuck & Co., in the Sears Case.

38. Defendant Mousseau transferred $15,000 to Bird-Marelly from the Mousseau Client Trust Account by check number 5171 dated March 16, 2001.

39. Defendant Mousseau transferred $10,000 to Bird-Marelly from the Mousseau Client Trust Account by check number 1532 dated May 7, 2001.

40. On May 22, 2001, Thomas Sullivan was held in contempt for forty-nine (49) counts of violation of the Preliminary Injunction in the Sears Case.

41. On October 29, 2001, Thomas Sullivan filed his Petition from Writ of Certiorari from the Contempt Conviction.

42. On November 16, 2001, Thomas Sullivan's Petition for Writ of Certiorari was denied.

43. Bay, Sherman, Craig & Goldstein acted as Accountants for Focus Media during the gap period.

44. Defendant Mousseau transferred $10,590 to Bay, Sherman, Craig & Goldstein from the Mousseau Client Trust Account by check number 1546 dated June 28, 2001.

45. Ervin, Cohen & Jessup served as Bankruptcy Cousel for Focus Media during the gap period.

46. Defendant Mousseau transferred $15,000 to Ervin, Cohen & Jessup from the Mousseau Client Trust Account by check number 1547 dated July 6, 2001.

47. On October 22, 2001, an Order for Relief under Chapter 7 of Title 11 was entered in connection with the Involuntary petition in this Bankruptcy Case and John P. Pringle was appointed as Chapter 7 Trustee.

48. In connection with the Order for Relief, the Bankruptcy Court entered findings that Mr. Sullivan had acted in bad faith and in violation of California Law.

49. On March 15, 2002, this Court's Order Granting the Petitioning Creditor's Motion for Relief due to failure of Defendant Mousseau to comply with Section 329, was entered which (in pertinent part) provides for disgorgement by Defendant Mousseau of $220,000, which has never been paid by Defendant Mousseau to the Estate.

50. On October 25, 2002, the Plaintiff Trustee filed his Complaint against ST&G and Defendant Mousseau.

51. On or about January 4, 2003, Defendant Mousseau filed his Amended Answer to the Plaintiff Trustee's Complaint.

Based on the foregoing findings of fact, I hereby find and conclude as follows:

1. The Funds are property of the Estate.

2. Defendant Mousseau must turnover the Funds to the Trustee pursuant to 11 U.S.C. §542.

3. The Funds were Transferred to Defendant Mousseau post-petition.

4. Defendant Mousseau had possession and/or custody of the funds while the instant bankruptcy case was pending.

5. Plaintiff Trustee may avoid the transfer of the Funds to Defendant Mousseau under 11 U.S.C. §549 and may recover the Funds pursuant to 11 U.S.C. §550.

6. The transfer of the Funds was authorized only under 11 U.S.C. §303(f).

7. The Indemnification Agreement was entered pre-petition and to the extent that it may give rise to any obligation on the part of the debtor, the obligation is a pre-petition obligation and any transfer made in satisfaction of the Indemnification Agreement was made in satisfaction of a pre-petition obligation.

8. The Estate received no value in exchange for the transfer of the Funds, either from Defendant Mousseau or from any subsequent transferees.

DATED: 6/11/03

_____
VINCENT P. ZURZOLO
United States Bankruptcy Judge

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list (specify date):

JUN 20 2003

Office of the U. S. Trustee
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Julie L. Pezhman
Roquemore, Pringle & Moore, Inc.
6055 East Washington Blvd., #608
Los Angeles, CA 90040

Peter C. Anderson
Roquemore, Pringle & Moore, Inc.
6055 East Washington Blvd., #608
Los Angeles, CA 90040

Geoffrey C. Mousseau
Mousseau & Associates
3435 Wilshire Blvd., Ste#2700
Los Angeles, CA 90010

_____/s/_____
Clerk